UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CRIMINAL NO. 4:21-cr-24 |
| § | |
| ZAHRA BADRI § | |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION
TO DISMISS THE INDICTMENT FOR FAILURE TO STATE AN OFFENSE**

The United States of America, by and through the undersigned attorneys, files its response to the Defendant's Motion to Dismiss the Indictment for Failure to State an Offense ("Motion"). (ECF No. 56). For the following reasons, the Court should deny this motion.

**I.     STATUTORY BACKGROUND**

The United States made female genital mutilation ("FGM") a federal crime in 1996. Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104–208, tit. VI § 645, 110 Stat. 3009 (1996) (codified as amended at 18 U.S.C. § 116) (the "FGM statute") (2012). Under the FGM statute, "whoever knowingly circumcises, excises, or infibulates the whole or any part of the labia majora or labia minora or clitoris of another person who has not attained the age of 18 years shall be fined under this title or imprisoned not more than 5 years, or both." 18 U.S.C. § 116(a).[1]

In 2013, Congress amended the FGM statute specifically to prohibit so-called vacation cutting. Section 1088 of the Defense Authorization Act for Fiscal Year 2013, titled "Transport for Female Genital Mutilation," added Section 116(d), which provides that "[w]hoever knowingly transports from the United States and its territories a person in foreign commerce for

---

[1] As discussed below, Section 116 was amended and restructured in 2021. We refer herein to the statutory provisions as they existed at the time of the alleged offense conduct in 2016.

the purpose of conduct with regard to that person that would be a violation of subsection (a) if the conduct occurred within the United States, or attempts to do so, shall be fined under this title or imprisoned not more than 5 years, or both." 18 U.S.C. § 116(d).

The legislative history of Section 116(d) and its predecessors underscores Congress's commitment to prohibiting "vacation cutting."[2] In 2010, Congressman Joseph Crowley and Congresswoman Mary Bono Mack first introduced a bill to amend the FGM statute to criminalize the transport of girls for the purpose of FGM. H.R. 5137, 111th Cong. (2009). Congressman Crowley again introduced a similar bill 2011, on behalf of himself and nineteen co-sponsors. H.R. 2221, 112th Cong. (2011). Senator Harry Reid likewise introduced a bill to amend the FGM statute in 2011. S. 1919, 112th Cong. (2011). In doing so, Senator Reid denounced FGM as a "degrading and inhumane practice," and explained that the purpose of amending the FGM statute was to close a "vacation loophole" by banning "the act of transporting girls overseas to be subject to FGM." 157 Cong. Rec. S7996-01, 2011 WL 5964440 (Nov. 29, 2011). Senator Reid stated that enacting the amendment would "help to better protect these girls by serving as a deterrent for those parents who are considering sending their young girls to their home countries to undergo FGM." *Id.*

One year later, the amendment was added in the Senate as part of the National Defense Authorization Act for Fiscal Year 2013. 158 Cong. Rec. S7293-02, 2012 WL 5984012 (Nov. 30,

---

[2] The legislative history of prior versions of the FGM statute is properly considered to interpret the statute's meaning and Congress's intent. *See, e.g.*, *Rostker v. Goldberg*, 453 U.S. 57, 72-74 (1981) (reviewing legislative history of previously defeated bills to conclude that Congress acted deliberately in excluding women from the military draft); *Walton v. Hammons*, 192 F.3d 590, 594 (6th Cir. 1999) ("The meaning of a statute's words can also be enlightened by their context and the contemporaneous legislative history, as well as the historical context of the statute." (quotations omitted)); *Wedding v. Wingo*, 483 F.2d 1131, 1135-36 (6th Cir. 1973) (considering prior versions of a statute to determine its meaning), *aff'd*, 418 U.S. 461 (1974).

2012). Congressman Crowley spoke in support of the amendment, stating that "[i]f signed into law, it will never again be acceptable, or legal, to transport a minor from the United States to another country for the purposes of FGM." 159 Cong. Rec. E2030-01, 2013 WL 11860 (Jan. 1, 2013). Congressman Crowley explained that "[t]he intent of this legislation is clear—if you plan or participate in the transportation of a minor abroad for [sic] so that the minor can undergo FGM, you will have committed a criminal act." *Id.*

In 2018, a district court dismissed charges under Section 116(a), based on domestic conduct, after finding that Congress lacked the constitutional authority to enact Section 116(a) under either the Commerce Clause or the Treaty Power. *United States v. Jumana Nagarwala, et al.,* 350 F. Supp. 3d 613, 631 (E.D. Mich. Nov. 20, 2018). Although the Department of Justice ultimately determined that it would not seek to enforce Section 116(a) (as it was then written) domestically, the United States never "conceded" the unconstitutionality of the entire FGM statute. In a letter to Congress pursuant to 28 U.S.C. 530D (the "530D Letter"), the Solicitor General explained that the Department had concluded, in light of post-enactment Supreme Court precedent in *United State v. Morrison*, 529 U.S. 598 (2000), that it lacked an adequate argument that Congress had the authority to enact Section 116(a), which "does not include any jurisdictional elements, such as a requirement that the charged offense have an explicit connection with, or effect on, interstate commerce." Letter from Solicitor General Noel Francisco to Sen. Dianne Feinstein (Apr. 10, 2019), *printed in the Congressional Record pursuant to request of Sen. Marsha Blackburn,* 166 Cong. Rec. S7496-02, at S7497-S7498, 2020 WL 7365884 (Dec. 15, 2019). The government then worked with Congress to amend Section 116 to add a jurisdictional element to the domestic offense. *See* Strengthening the Opposition to Female Genital Mutilation Act of 2020, Pub. L. No. 116–309, 134 Stat. 4922 (2021) (codified as

amended at 18 U.S.C. § 116) (the "STOP FGM Act") (2021).  The revised statute, now in effect, restructured but retained the prohibition on "vacation cutting."

## II.     LEGAL STANDARD

When evaluating a motion to dismiss based on the alleged unconstitutionality of a statute, courts review statutes with a "presumption of constitutionality in mind" because "[d]ue respect for the decisions of a coordinate branch of Government demands that [courts] invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds."  *United States v. Morrison*, 529 U.S. 598, 607 (2000).

There are two general categories of constitutional challenges: facial challenges to Congress's authority to enact a statutory provision, and as-applied challenges that attack the constitutionality of the statute as applied to an individual defendant's alleged conduct.  Here, the defendants have raised only a facial challenge to the FGM statute by alleging that Section 116(d) of the FGM statute "fails to proscribe a prosecutable offense" without any reference to the facts of this particular case.  (Motion at 9, ECF No. 56).

Facial challenges, however, are "discouraged," *Sabri v. United States*, 541 U.S. 600, 609 (2004), and are "the most difficult challenge to mount successfully."  *United States v. Salerno*, 481 U.S. 739, 745 (1987).  Courts approach such challenges with caution because they "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008) (internal quotation omitted).

For a facial challenge to succeed, the proponent must demonstrate "'no set of circumstances exist under which the Act would be valid,' i.e., that the law is unconstitutional in all of its applications." *Id.* at 449 (quoting *Salerno*, 481 U.S. at 745). And the court may strike down a statute only if "the lack of constitutional authority to pass the act in question is clearly demonstrated." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012) (quotation omitted). If, however, "the acts charged against [the defendants themselves] [a]re well within the limits of legitimate congressional concern," the fact that it might not "be enforce[able] against someone else whose behavior would be outside the scope of Congress's Article I authority" is irrelevant. *Sabri,* 541 U.S. at 609. Such "overbreadth" challenges are only cognizable in limited contexts not relevant here. *Id.* at 609-10.

As explained below, the defendant has not and cannot meet her high burden of clearly demonstrating that there is no set of circumstances under which 18 U.S.C. § 116(d) would be a valid exercise of Congress's authority. This Court should, accordingly, deny her motion.

### III.    ARGUMENT

The defendant's claim that a constitutional flaw in Section 116(a) of the FGM statute, which applied to FGM occurring domestically, automatically invalidated the entire statute, including the "vacation cutting" prohibition in Section 116(d), is a rhetorical sleight of hand that ignores fundamental principles of constitutional interpretation.

"Generally speaking, when confronting a constitutional flaw in a statute, [courts] try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact," *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477, 508 (2010) (internal quotation marks omitted), because "[a] ruling of unconstitutionality frustrates the intent of the elected representatives." *Ayotte v. Planned Parenthood of N. New Eng.*, 546

U.S. 320, 329 (2006) (alteration in original) (internal quotation marks omitted). *See also United States v. Booker*, 543 U.S. 220, 258 (2005) ("[Courts] refrain from invalidating more of [a] statute than is necessary") (internal quotation marks omitted). Accordingly, when courts invalidate a provision of a statute because it is unconstitutional, they start with a presumption that the provision is severable from the remainder of the section or act. *See Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685–86 (1987). This presumption of severability is overcome only if something "in the statute's text or historical context makes it 'evident' that Congress, faced with the limitations imposed by the Constitution, would have preferred" no statute at all to a statute with the invalid part excised. *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 509 (2010) (quoting *Alaska Airlines*, 480 U.S. at 684). As the Supreme Court recently confirmed, the "'traditional' rule is that 'the unconstitutional provision must be severed unless the statute created in its absence is legislation that Congress would not have enacted,'" applies "[e]ven in the absence of a severability clause." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, ––– U.S. –––, 140 S. Ct. 2183, 2209, 207 L.Ed.2d 494 (2020)) (quoting *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987)).

In conducting this inquiry, courts "must retain those portions of the Act that are (1) constitutionally valid, (2) capable of functioning independently, and (3) consistent with Congress' basic objectives in enacting the statute." *United States v. Booker*, 543 U.S. 220, 258–59 (2005) (internal citations and quotation marks omitted). Section 116(d) of the FGM statute meets each of these three factors.

***First***, Section 116(d) is a valid exercise of Congress's authority under the Foreign Commerce Clause. The defendant relies on the district court decision in *Nagarwala,* 350 F.

Supp. 3d at 631.  But, that district court decision is nonprecedential and even it did not find the entire FGM statute unconstitutional.

Although the Department of Justice ultimately determined that it would not seek to enforce Section 116(a) (as it was then written) domestically, the United States never "conceded" the unconstitutionality of the entire FGM statute.  The government's position in the 530D Letter accords with the constitutional principal of severability, which, for the reasons described herein, preserves the application of other subsections of the FGM statute, including Section 116(d).  Indeed, there is nothing in the *Nagarwala* district court's decision or the Solicitor General's 530D Letter that calls into question the constitutionality of the definition of FGM, only Congress's authority to enact Section 116(a) to prohibit FGM domestically without also including a jurisdictional element requiring a nexus with interstate commerce.  Section 116(d) suffers from no such constitutional infirmity.

Unlike Section 116(a), Section 116(d) requires, as an element of the offense, transportation of girls in foreign commerce (from the United States) for the purpose of having FGM performed.  Accordingly, the Foreign Commerce Clause, U.S. Const. art. I, § 8, cl. 3, which provides Congress with the authority "[t]o regulate Commerce with foreign Nationals . . .," empowered Congress to enact Section 116(d).  The Foreign Commerce Clause allows Congress to regulate the use of channels and instrumentalities of foreign commerce.  *See, e.g.*, *United States v. Bollinger*, 798 F.3d 201, 215 (4th Cir. 2015) (noting that the Supreme Court has not addressed extensively the scope of the Foreign Commerce Clause, but that it is generally understood to encompass regulation of the use of channels and instrumentalities of foreign commerce, consistent with Congress's authority under the interstate Commerce Clause and the Supreme Court's articulation of this authority in *United States v. Lopez*, 514 U.S. 549, 558-59

(1995)). And travel from the United States to a foreign country necessarily involves the channels and instrumentalities of foreign commerce. *See, e.g.*, *United States v. Bredimus*, 352 F.3d 200, 205-07 (5th Cir. 2003).

Courts routinely uphold the constitutionality of statues prohibiting transport or travel in foreign commerce of illicit goods or of people for illegal purposes. In 1994, Congress amended the Mann Act by adding a provision criminalizing travel to another country for the purpose of engaging in sexual activity with a minor. Pub. L. No. 103-322, § 160001(g), 108 Stat. 1796 (1994) (codified as amended at 18 U.S.C. § 2423(b)). In *United States v. Bredimus*, 352 F.3d 200 (5th Cir. 2003), the defendant was charged with traveling in foreign commerce with the intent to engage in a "sexual act" with children, in violation of 18 U.S.C. § 2423(b). The defendant argued § 2423(b) is unconstitutional because it exceeds the scope of Congress's power to regulate the channels of commerce under the Commerce Clause. The Fifth Circuit upheld § 2423(b) because Congressional power under the Commerce Clause is "broad enough to include individuals who travel in foreign commerce for the purpose of engaging in prohibited sexual activity with minors." *Id.*

Similarly, in *United States v. Pendleton*, 658 F.3d 299, 311 (3d Cir. 2011), the defendant was indicted for engaging in noncommercial illicit sexual conduct in a foreign place in violation of 18 U.S.C. § 2423(c), which prohibits a person from "engaging in" illicit sexual conduct in foreign commerce. The defendant challenged Congress's authority to regulate noncommercial activity outside the United States under the Foreign Commerce Clause and the Due Process Clause of the Fifth Amendment. The district court held that 18 U.S.C. § 2423(c) was a valid exercise of Congress's power to regulate the "channels" of foreign commerce. The Third Circuit affirmed, holding Congress "may regulate persons who use the channels of commerce to

circumvent local laws that criminalize child abuse and molestation" and that "because the jurisdictional element in § 2423(c) has an 'express connection' to the channels of foreign commerce, *United States v. Morrison,* 529 U.S. 598, 612 120 S. Ct. 1740 (2000), . . . [§ 2423(c)] is a valid exercise of Congress's power under the Foreign Commerce Clause." *Pendleton*, 658 F.3d at 311.  *See also United States v. Clark,* 435 F.3d 1100, 1114 (9th Cir. 2006) (finding that U.S. citizen who traveled in foreign commerce and engaged in illicit commercial sex acts could be prosecuted under § 2423(c) and noting "the phrase 'travels in foreign commerce' unequivocally establishes that Congress specifically invoked the Foreign Commerce Clause.").

Accordingly, Section 116(d), which contains a jurisdictional hook requiring transportation in foreign commerce, is a constitutionally valid exercise of Congress's power under the Foreign Commerce Clause.

***Second***, Section 116(d) is capable of functioning independently.  Contrary to the defendant's assertions, the cross-reference to Section 116(a) does not invalidate Section 116(d). "A subsection of a statute is capable of functioning independently as a fully operative law, even if it must be understood by reference to an inoperative portion of the statute in order for its meaning to be clear." *Hamad v. Gates,* 732 F.3d 990, 1001–02 (9th Cir. 2013) (quotation marks, citation, and alteration omitted).  When there is a "cross-reference to [a subsection of a statute that] serves merely a definitional purpose," it "does not negate [another subsection] by association." *Ameur v. Gates*, 759 F.3d 317, 330 (4th Cir. 2014).  *See also Leavitt v. Jane L.,* 518 U.S. 137, 142 (1996) (finding that one section's cross-reference to earlier, invalid section did not establish "such 'interdependence' that [the later section] becomes 'purposeless' when [the earlier section] is unenforceable").

Where the Supreme Court has invalidated another subsection of a statute based on "critical cross-references" to an invalid subsection, both sections shared the same constitutional flaw. In *United States v. Booker*, 543 U.S. 220 (2005), for instance, the Court determined that the provision of the federal sentencing statute that made the Guidelines mandatory was unconstitutional based on the Sixth Amendment requirement that juries, not judges, find facts that increase the maximum sentence a defendant may receive. While the Court determined that a different section that set forth standards of review on appeal "contain[ed] critical cross-references to the (now-excised) [section] and consequently must be severed and excised for similar reasons," the appeals-related section also "depend[ed] upon the Guidelines' mandatory nature" – and thus suffered from the same constitutional infirmity. *Id.* at 245, 260.

Here, Section 116(d) merely refers to Section 116(a) for the definition of FGM and does not depend upon any aspects of Section 116(a) that are constitutionally unsound. Section 116(d) is thus capable of functioning independently as a fully operative law.

***Finally***, retaining Section 116(d) is consistent with Congress' basic objectives in amending the FGM statute specifically to prohibit so-called vacation cutting.

The severability test is based on congressional intent. *Alaska Airlines*, 480 U.S. at 685. The "relevant question . . . is not whether [Congress] would prefer" to prohibit both FGM occurring domestically and "vacation cutting"—obviously, it would—but "whether [Congress] would prefer not to have [subsection (d)] if it could not have [subsection (a)] as well." *Leavitt v. Jane L.,* 518 U.S. 137, 143 (1996).

Section 116(d)'s text and the legislative record, as set forth above, indicates that preserving this provision is consistent with Congress's basic objective in enacting and then amending the FGM statute: to prohibit FGM and, specifically, to criminalize "vacation cutting."

As Congressman Crowley explained, "[t]he intent of this legislation is clear—if you plan or participate in the transportation of a minor abroad for [sic] so that the minor can undergo FGM, you will have committed a criminal act." 159 Cong. Rec. E2030-01, 2013 WL 11860 (Jan. 1, 2013). Excising Section 116(d) would frustrate this intent and foreclose any justice for child victims who have been transported oversees and subjected to FGM.

## IV. CONCLUSION

For the reasons above, the Defendant's Motion to Dismiss the Indictment for Failure to State an Offense should be denied.

DATED: March 10, 2023

                                                                                                            Respectfully submitted,

                                                          /s/ *Elizabeth Nielsen*
Elizabeth Nielsen
Trial Attorney
Human Rights and Special Prosecutions
Criminal Division
United States Department of Justice
1301 New York Ave, N.W., 12th Floor
Washington, DC 20530
Phone: 202-616-5631
Email: Elizabeth.Nielsen@usdoj.gov

Rami Badawy
Acting Deputy Chief
Human Rights and Special Prosecutions
Criminal Division
United States Department of Justice
1301 New York Ave, N.W., 12th Floor
Washington, DC 20530
Phone: 202-616-5631
Email: Rami.Badawy2@usdoj.gov

Susan Masling
Senior Trial Attorney
Human Rights and Special Prosecutions

Criminal Division
United States Department of Justice
1301 New York Ave, N.W., 12th Floor
Washington, DC 20530
Phone: 202-616-2536
Email: susan.masling@usdoj.gov

Sherri Zack
Assistant United States Attorney
Southern District of Texas
1000 Louisiana St., Ste. 2300
Houston, TX 77002
Phone: 713-567-9374
Email: szack@usa.doj.gov

Kim Leo
Assistant United States Attorney
Southern District of Texas
1000 Louisiana St., Ste. 2300
Houston, TX 77002
Phone: 713-567-9465
Email: kleo@usa.doj.gov

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the United States' Response to Defendant's Motion to Dismiss the Indictment for Failure to State an Offense has been filed electronically through ECF filing on all defense counsel of record on this 10th day of March 2023.

                                           */s/ Elizabeth Nielsen*
                                           Elizabeth Nielsen
                                           Trial Attorney
                                           Human Rights and Special Prosecutions
                                           Criminal Division
                                           United States Department of Justice
                                           1301 New York Ave, N.W., 12th Floor
                                           Washington, DC 20530
                                           Phone: 202-616-5631
                                           Email: Elizabeth.Nielsen@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § § | CRIMINAL NO. 4:21-cr-24 |
| ZAHRA BADRI | § | |

## ORDER

HAVING CONSIDERED the Defendant's Motion to Dismiss the Indictment for Failure to State an Offense and the Government's Response, hereby ORDERS that Defendant's Motion be DENIED.

Signed at Houston, Texas this the _____ day of _____, 2023.

_____
UNITED STATES DISTRICT JUDGE